IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FEDERAL INSURANCE COMPANY, )
)
                Plaintiff, )
)
v. )   Case No. 16-2755-JWL
)
TAT TECHNOLOGIES, LTD., )
)
                Defendant. )
)
_____)

## MEMORANDUM AND ORDER

This product liability action by plaintiff subrogee presently comes before the Court on defendant's motion to dismiss for lack of personal jurisdiction and for failure to state a claim (Doc. # 40). For the reasons set forth below, the motion is **granted in part and denied in part**. The Court concludes that it may exercise personal jurisdiction over defendant in this action, and the motion is therefore denied with respect to that issue.[1] The Court further concludes that plaintiff's claims as subrogee of Bridgeport Associates, Inc. (Counts IV and VI) are barred by the applicable statute of limitations; those claims are hereby dismissed, and the motion is granted to that extent.

---

[1] In light of this ruling, the Court denies as moot plaintiff's motion to conduct jurisdictional discovery (Doc. # 41).

## I. Background

Plaintiff insurer brings this action as subrogee of two companies, Bridgeport Associates, Inc. ("Bridgeport") and Bama Air, Inc. ("Bama"). Plaintiff seeks to recover the amounts it paid as insurance proceeds for damage to two airplanes, one owned by Bridgeport and one owned by Bama. In each case, plaintiff alleges that the same part in the aircraft, a precooler, was defective, and that defendant manufactured that defective part. Plaintiff further alleges that defendant sold those parts to Cessna Aircraft Company ("Cessna") and/or Textron Aviation, Inc. ("Textron"), Kansas companies; that Cessna and/or Textron incorporated those parts into airplanes manufactured in Kansas; and that Cessna and/or Textron then sold those airplanes to Bridgeport and Bama, located in Massachusetts and Alabama respectively. In this action, plaintiff asserts claims against defendant sounding in strict liability and negligence with respect to the Bridgeport plane (Counts IV and VI) and with respect to the Bama plane (Counts I and III).[2]

## II. Personal Jurisdiction

Although a plaintiff bears the burden of establishing personal jurisdiction over a defendant, *see OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1091 (10th Cir. 1998), in the preliminary stages of litigation this burden is "light." *See Intercon, Inc. v.*

---

[2]In this action, plaintiff originally asserted the same claims against Cessna and Textron for both aircraft (Counts I and II, Counts IV and V), but plaintiff has since dismissed those claims without prejudice.

2

*Bell Atlantic Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995)). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction "is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *See id.* The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *See id*. Moreover, if the parties present conflicting affidavits, "all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *See id.*

In *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159 (10th Cir. 2011), the Tenth Circuit reaffirmed the following standards governing this Court's analysis of the issue of personal jurisdiction over a defendant:

> Where a federal lawsuit is based on diversity of citizenship, the court's jurisdiction over a nonresident defendant is determined by the law of the forum state. The party seeking to establish personal jurisdiction over a foreign defendant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment. Kansas's long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process principles. Consequently, this court need not conduct a statutory analysis apart from the due process analysis.
>
> The due process analysis is also two-fold: First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he purposefully availed himself of the protections or benefits of the state's laws and should reasonably anticipate being haled into court there. . . .
>
> If [the defendant] is found to have the requisite minimum contacts

3

> with Kansas, then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him does not offend traditional notions of fair play and substantial justice. [The defendant] bears the burden at this stage to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*See id.* at 1166-67 (citations and internal quotations omitted).

> Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state. . . .  The purpose of this requirement is to ensure that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous or attenuated contacts, or of the unilateral activity of another party or a third person.

*See Employers Mutual Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (citations and internal quotations omitted).

The Supreme Court has recognized two types of personal jurisdiction: general jurisdiction, which allows for jurisdiction over the defendant for any claim; and specific jurisdiction, which allows for jurisdiction over the defendant only for suits arising out of or related to the defendant's contacts with the forum state. *See Bristol-Myers Squibb Co. v. Superior Ct. of Calif.*, 137 S. Ct. 1773, 1779-80 (2017). Plaintiff does not argue that defendant, an Israeli company, has such contacts with Kansas that it is subject to general jurisdiction here. *See id.* at 1780 (corporation is subjection to general jurisdiction where it is fairly regarded as at home). Thus, the Court considers only whether it may exercise specific jurisdiction over defendant with respect to these particular claims. Moreover, defendant does not argue that jurisdiction would be unreasonable here under the second step of the due process analysis. Thus, the Court

considers only the first step, which requires minimum contacts with Kansas.

In this case, the facts relevant to the Court's analysis of jurisdiction are not in dispute. Defendant did not design or manufacture the allegedly defective parts in Kansas, but it did sell them to Kansas companies who incorporated them into their planes. Those planes were then sold to purchasers in other states, where the parts allegedly failed and caused damage.[3]

The Court concludes that plaintiff has made the requisite prima facie showing of specific jurisdiction over defendant in this case. Defendant had contact with Kansas when it shipped two allegedly defective precoolers to the State, where they were incorporated into airplanes that allegedly failed. Thus, plaintiff's claims arise directly from defendant's contacts with the forum state. Moreover, defendant intentionally sold its parts to Kansas companies and shipped its parts to that state for use in airplanes, and therefore the relevant contacts were not merely random or fortuitous and did not result from some other party's unilateral action.

Neither party cited any case involving the shipment of a component part into the forum state. The Court notes, however, that the Fifth Circuit at least has held that the sale and shipment of an allegedly defective part into the forum state may provide the necessary contact to support specific jurisdiction. *See Thompson v. Chrysler Motors*

---

[3] The Court does not find the length of defendant's relationship with the Kansas companies (a fact asserted by plaintiff) or the number of parts shipped by defendant into Kansas over the years (a fact that plaintiff seeks leave to discover) to be necessary to its analysis of this issue.

5

*Corp.*, 755 F.2d 1162, 1172 (5th Cir. 1985).  Although *Thompson* involved an injury suffered by residents of the forum state, the court concluded that the shipment alone was sufficient:

> The sale and shipment of the master cylinder into Mississippi [the forum state] represented an affirmative act by [the defendant] to introduce its product into Mississippi for use in that state.  By this shipment, [the defendant] purposefully availed itself of the privilege of conducting activities in Mississippi and its connection with the forum is such that it should reasonably anticipate being haled into court there when the accident giving rise to the suit was caused by an alleged defect in the product sold and shipped to the forum.

*See id.*  Similarly here, defendant affirmatively shipped its products to Kansas for use there in the manufacture of airplanes, and thus it purposefully availed itself of the benefits of conducting business here.  This is not a case in which defendant is being sued in a random forum where the defective airplane happened to be flying when it failed; rather, plaintiff has asserted jurisdiction where the allegedly defective airplanes were manufactured, in the state to which defendant directed its product for such manufacture.  That contact is sufficient under the governing standard.

In arguing that its contacts are not sufficient, defendant stresses that it is not alleged to have committed the wrongful acts—the design and manufacture of the allegedly defective parts—in Kansas; but of course the jurisdictional standard focuses instead on the defendant's contacts with the forum state and whether the suit arose from or is related to those contacts.  Defendant has not explained how plaintiff's claims are unrelated to the shipment of the parts into Kansas, where the parts were incorporated into

6

the subject airplanes.  Defendant also cites *Walden v. Fiore*, 134 S. Ct. 1115 (2014), in which the Supreme Court noted that the contacts required to support specific jurisdiction must be those created by the defendant itself, and must be contacts with the state itself and not merely with its residents.  *See id.* at 1122.  This is not a case, however, in which defendant had contact with a Kansas resident but everything occurred outside of the state.  Defendant shipped its parts into Kansas for use here; thus, defendant's contacts are both with Kansas residents and with Kansas itself, and those contacts were intentionally created by defendant.  As noted above, defendant has not provided any authority suggesting that such contacts are not sufficient to support specific jurisdiction.

Accordingly, the Court concludes that plaintiff has made the necessary showing of personal jurisdiction over defendant in this case, and the Court therefore denies defendant's motion to dismiss the action on jurisdictional grounds.

### III.    Statute of Limitations

Defendant also argues that the claims relating to Bridgeport's airplane (Counts IV and VI), which are based on a November 2013 failure, are time-barred under Kansas's two-year statute of limitations for torts.  *See* K.S.A. § 60-513.  Plaintiff initiated this action on November 3, 2016.  Plaintiff does not dispute that a two-year limitations period would apply to its claims under Kansas law or that these claims accrued in November 2013.  Instead, plaintiff argues only that the Bridgeport claims are governed by a three-year statute of limitations under Massachusetts law.

The parties agree that, in a diversity case, a court must apply the choice-of-law rules of the forum state. *See Garcia v. International Elevator Co.*, 358 F.3d 777, 779 (10th Cir. 2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495-97 (1941)). Plaintiff argues that under Kansas's choice-of-law rules, its Bridgeport claims would be governed by the substantive law of Massachusetts, where Bridgeport suffered its financial harm. Kansas, however, applies its own statutes of limitations. *See id.* (citing *Muzingo v. Vaught*, 18 Kan. App. 2d 823 (1993)); *Green v. Kensinger*, 199 Kan. 220, 223-24 (1967). Kansas recognizes two exceptions to that rule:

> First, if a cause of action is based on a foreign statute (i.e., a non-Kansas statute) that incorporates a limitation period for suit, that statutory time restriction is considered substantive in nature and will be considered controlling. Second, if the cause of action arose in another jurisdiction, the Kansas borrowing statute, Kan. Stat. Ann. § 60-516, requires application of the other jurisdiction's statute of limitations if it would result in the action being time-barred.

*See Garcia*, 358 F.3d at 779 (citation, internal quotations, and footnote omitted). Neither exception applies here, however. First, plaintiff's claims are for strict liability and negligence, and it has not cited any Massachusetts (or other) statute that provides the basis for its claims and that includes its own limitations period. Second, the Kansas borrowing statute applies by its terms only when the borrowed limitations period is *shorter* than the Kansas limitations period, and thus, that exception could not help plaintiff here.

Accordingly, Kansas's two-year limitations period applies. The face of the complaint reveals that plaintiff filed this action more than two years after the Bridgeport

8

claims accrued. Therefore, the Court grants defendant's motion to dismiss those claims as time-barred.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion to dismiss for lack of personal jurisdiction and for failure to state a claim (Doc. # 40) is **granted in part and denied in part**. The motion is denied with respect to the issue of personal jurisdiction. The motion is granted with respect to plaintiff's claims as subrogee of Bridgeport Associates, Inc. (Counts IV and VI); those claims are hereby dismissed as time-barred.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion to conduct jurisdictional discovery (Doc. # 41) is **denied as moot**.

IT IS SO ORDERED.

Dated this 1st day of December, 2017, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
